UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DARRIN LaPINE,

               Plaintiff,                       Case No. 2:09-cv-214

v.                                           Honorable R. Allan Edgar

PATRICIA CARUSO et al.,

               Defendants.

_____/

**OPINION**

        Plaintiff Darrin LaPine, an inmate currently confined at the Chippewa County Jail, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against MDOC Director Patricia Caruso, OCF Chaplain James Vilgos, former MDOC Special Acts Coordinator Dave Burnett, OCF Lieutenant Doug Bull, and psychologist Doreene Mathews. The events underlying Plaintiff's complaint occurred while he was incarcerated at the Ojibway Correctional Facility (OCF).

        In Plaintiff's complaint, he raises nine counts against Defendants. In Count I, Plaintiff alleges that Defendant Caruso failed to enforce rules and policies and control the actions of her subordinates. In Counts II - IV, Plaintiff alleges that Defendant Chaplain Vilgos did not let Plaintiff practice his religion, retaliated against Plaintiff for filing a grievance against Vilgos by causing Plaintiff to be placed in administrative segregation, conspired with Defendants Burnett, Bull, Caruso and others to retaliate against Plaintiff, and falsified misconduct reports against Plaintiff to cause him to be placed in long-term administrative segregation. In Count V, Plaintiff alleges that Defendants

Burnett and Caruso conspired with Defendant Vilgos to prevent Plaintiff from practicing his religion.[1]

In Count VII, Plaintiff asserts that Defendant Bull "cranked down" on the handcuffs he placed on Plaintiff, causing Plaintiff great pain and injuring Plaintiff's wrist. Defendant Bull also took Plaintiff's medicine bag, which Plaintiff uses to practice his religion. In Count VIII, Plaintiff alleges that Defendants Bull and Vilgos placed him in segregation for five days in a cell with no heat and a window that would not close in freezing temperatures. Plaintiff alleges that he was not allowed to sleep and was given insufficient bedding and clothing for the cold. In Count IX, Plaintiff alleges that his personal items, including personal and religious photographs were destroyed. In Count X, Plaintiff claims that Defendant Mathews retaliated against him for filing a grievance. Plaintiff claims that she refused to provide him medical care causing him mental and emotional anguish.

Presently before the Court are the Motions for Summary Judgment filed by Defendants Caruso, Burnett, Bull, and Vilgos pursuant to Fed. R. Civ. P. 56 (docket #22 and #74). Plaintiff has filed responses and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty*

---

[1] Plaintiff numbers counts one through ten, but does not list a count six.

*Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In support of their motion for summary judgment, Defendants Caruso, Burnett, and Bull offer copies of their affidavits, the misconduct hearing report, and pertinent grievances and the responses. Based on these documents, Defendants state that on October 13, 2006, at the beginning of the Native American Traditional Worship (NATW) at OCF, Defendant Vilgos read an email to Plaintiff and other attendees, which was written by Defendant Burnett regarding restrictions on their worship. Defendant Burnett's email stated that NATW smudging was restricted to the opening part of the NATW services and should only last three to five minutes.[2] The email also stated that the Prisoner Benefit Fund (PBF) could not be used to purchase personal property for prisoners, such as herbs for the NATW. (Defendants' Exhibit 1, Major Misconduct Hearing Report; and Exhibit 2, Vilgos' affidavit, ¶ 4.)

---

[2] Smudging: *n* in Native American medicine, the ritual of purifying the location, patient, healer, helpers and ritual objects by using the smoke obtained by burning sacred plants, such as sage, sweetgrass, and cedar. It alters the state of consciousness and enhances sensitivity. http://medical-dictionary.thefreedictionary.com/smudging.

In the major misconduct report, Defendant Vilgos stated that after he read the email, Plaintiff assembled the other prisoners at a table and began dictating to them how they should write grievances and lawsuits against the MDOC and Defendant Vilgos. Plaintiff and Defendant Vilgos then had a verbal confrontation and Defendant Vilgos radioed for corrections officers and religious services were ended. On October 14, 2006, Defendant Vilgos wrote Plaintiff a major misconduct ticket and for attempting to riot or strike, threatening behavior, and creating a disturbance. On October 19, 2006, Plaintiff was found not guilty of the charges. (Defendants' Exhibit 1, Major Misconduct Hearing Report.) Plaintiff filed two grievances regarding the incident, which named Defendants Vilgos and Burnett. Plaintiff's grievances were denied at each step. (Defendants' Exhibit 3, OCF 2006-10-1148-20c, and Exhibit 4, OCF 2006-10-1152-27a.)

In Plaintiff's complaint, he asserts that Defendant Bull was involved with handcuffing him and taking him to segregation on October 14, 2006, following the issuance of the misconduct tickets. Plaintiff alleges that Defendant Bull injured him when handcuffing him, violated his religious rights by taking his medicine bag away from him prior to placement in segregation, and was negligent in his duties. Defendant Bull attests that he does not recall handcuffing Plaintiff, and asserts that because he is a lieutenant and supervising officer, he is not involved in handcuffing prisoners unless there is an emergency. Defendant Bull states that handcuffing Plaintiff and taking him to segregation following the issuance of the misconduct ticket on October 14, 2006, was not an emergency. (Defendants' Exhibit 5, Bull Affidavit, ¶¶ 2-3.)

Defendants state that Plaintiff failed to file a grievance related to any injuries incurred by being handcuffed. (Defendants' Exhibit 6, Stapleton Affidavit, ¶ 7.) Plaintiff filed a grievance complaining that his medicine bag was taken from him when he was placed in segregation. The step I respondent found that Plaintiff's medicine bag had been taken from him so that staff could conduct

a security search when he was placed in temporary segregation. The bag and contents were held and were to be given to Plaintiff when he requested it for religious practice. Plaintiff did not request the bag. The denial of Plaintiff's grievance was upheld at steps II and III. (Defendants Exhibit 7, Grievance OCF 2006-10-1147-20c.)

Defendant Caruso asserts that she is entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.

*See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff makes a conclusory assertion that in the course of responding to Plaintiff's complaints, Defendant Caruso contacted Defendant Burnett, who contacted Defendant Vilgos and administration at OCF. However, such conduct merely shows that Defendant Caruso denied Plaintiff's grievances and failed to act on his complaints. Defendant Caruso cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Defendant Caruso is entitled to summary judgment for lack of personal involvement.

Defendant Burnett contends that he is entitled to summary judgment on Plaintiff's retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least

in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendant Burnett retaliated against him by emailing Defendant Vilgos instructions regarding Plaintiff's religious services. Defendant Burnett states that Plaintiff fails to show that he engaged in any protected conduct. Furthermore, Defendant Burnett states that Plaintiff cannot show that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in the protected conduct.

In response to Defendant Burnett's claims, Plaintiff asserts that he was engaged in NATW activities upon his arrival at OCF, and that the retaliation was motivated by this conduct. Defendant Burnett concedes that on September 22, 2006, Plaintiff wrote a letter to Defendant Burnett. In the letter, which is attached to Plaintiff's complaint, he complained that Defendant Vilgos had been retaliating against him for asserting his First Amendment right to exercise his religious beliefs. The letter accuses Defendant Vilgos of conspiring against Plaintiff on various occasions and of writing false misconducts on him for "smudging." The letter also threatened a class action law suit regarding the perceived discrimination against adherents to NATW. (Docket #1-3, pp. 39-40.) Plaintiff claims that his involvement in NATW activities and his letter of complaint regarding the infringement of his free exercise rights constitutes protected conduct. The court agrees.

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Plaintiff asserts that the adverse action taken by Defendant Burnett

was to author the email read by Defendant Vilgos during the NATW service. Defendant Burnett's email stated that NATW smudging was restricted to the opening part of the NATW services and should only last three to five minutes. In addition, the email stated that the Prisoner Benefit Fund (PBF) could not be used to purchase herbs for the NATW. (Defendants' Exhibit 1, Major Misconduct Hearing Report; and Exhibit 2, Vilgos' affidavit, ¶ 4.) Plaintiff states that the hearing packet related to his misconduct ticket contains witness statements which showed that the NATW were told that they could not pray for more than three minutes as a result of Defendant Burnett's email and that this was enforced by Defendant Vilgos. Plaintiff asserts that a review of this packet will substantiate his claims and asks that the court allow discovery of this material. In addition, Plaintiff states that prisoners who are members of other religious groups are allowed to use PBF funds to purchase items such as Bibles and Korans. The court concludes that Defendant Burnett's conduct as alleged by Plaintiff is sufficiently adverse to support a retaliation claim. Therefore, Defendant Burnett is not entitled to summary judgment on Plaintiff's retaliation claim.

Plaintiff also claims that Defendant Vilgos retaliated against him when he wrote a misconduct ticket on Plaintiff for attempting to riot or strike, threatening behavior, and creating a disturbance. Defendant Vilgos concedes that Plaintiff was engaged in protected conduct. However, Defendant Vilgos asserts that because Plaintiff was found not guilty of the misconduct charges, the ticket was not adverse and cites *Cromer v. Dominguez*, 103 Fed. Appx. 570 (6th Cir. 2004) in support of this assertion. However, in *Cromer,* the Sixth Circuit was addressing a due process claim, not a claim of retaliation. The court notes that subjecting a prisoner to major misconduct charges is sufficiently adverse to support a retaliation claim.

Defendant Vilgos contends that there is no causal connection between the protected conduct and the misconduct charge. The court notes that temporal proximity may be "'significant

enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). As noted above, Plaintiff complained about Defendant Vilgos in a letter to Defendant Burnett prior to the issuance of the misconduct ticket. Plaintiff also discussed the filing of grievances regarding restrictions on religious services with other prisoners prior to the misconduct charges. Plaintiff was found not guilty of the charges after his misconduct hearing. Therefore, the court concludes that there is an issue of fact regarding Plaintiff's retaliation claim against Defendant Vilgos.

Plaintiff claims that Defendants Burnett and Vilgos violated his equal protection rights. To establish a violation of the Equal Protection Clause, there must be proof that a discriminatory intent or purpose was a factor in an action taken by the prison officials. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). Plaintiffs must allege that a state actor intentionally discriminated against him because of his membership in a protected class. *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990); *see Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993) (protection violated by a pattern of harassment that shows a selective discriminatory purpose). The claim that Plaintiff was treated one way and everyone else treated another way, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). Rather, Plaintiff must demonstrate that he was victimized by some suspect classification. *Id.* A person's conduct is legitimate for purposes of this clause even though it may have been mean-spirited, ill-considered, or otherwise unjustifiable, objectionable or unreasonable, so long as it was not motivated by class-based discrimination. *See Galbraith v. Northern Telecom Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945

9

(1992).  Absent some allegation or proof that the law was applied differently to Plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring).

As noted above, Plaintiff alleges that the hearing packet related to his misconduct ticket contains witness statements which showed that the NATW were told that they could not pray for more than three minutes as a result of Defendant Burnett's email and that this was enforced by Defendant Vilgos.  Plaintiff seeks discovery of this packet, contending that it will substantiate his claims.  In addition, Plaintiff states that Defendant Burnett's email was directed solely at the NATW and that other religions are not similarly limited because prisoners who are members of other religious groups are allowed to use PBF funds to purchase items such as Bibles and Korans.  The court concludes that Plaintiff has shown that there is an issue of fact regarding whether he was treated differently from members of other religions on the basis of his religion by Defendants Burnett and Vilgos.  Therefore, these Defendants are not entitled to summary judgment on Plaintiff's equal protection claims.

Plaintiff claims that the conduct of Defendants Burnett and Vilgos violated his due process rights.  However, Defendant Burnett does not appear to have been involved with the events of October 13, 2006, other than to author the email which was read during the service.  Because Defendant Burnett was not involved with Plaintiff being placed in segregation, he is entitled to summary judgment on Plaintiff's due process claim.

Nor does the stoppage of the religious service on October 13, 2006, or Plaintiff's placement in temporary segregation from October 14, 2006, until his hearing on October 19, 2006, constitute an atypical and significant hardship.  To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due

process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding).

In this case, Plaintiff claims that he was subjected to freezing temperatures without sufficient clothing or blankets. However, Defendants offer a copy of Plaintiff's medical records which show Plaintiff was seen numerous times while in temporary segregation, during which he asked for his medications, complained of abdominal pain, and was suspected of being on a hunger strike. Plaintiff's stool was tested for occult blood and his diet was monitored to make sure that he was eating. (Defendants' Exhibit 13, pp. 6-20.) There is absolutely no indication Plaintiff was subjected to freezing temperatures in his segregation cell. Therefore, because Plaintiff's confinement in temporary segregation did not present an "atypical and significant" hardship, it did not violate his due process rights.

With regard to the misconduct ticket written by Defendant Vilgos, Plaintiff appears to have received the process that he was due. Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing

officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.* Plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing. In fact, at the conclusion of the hearing, Plaintiff was found "not guilty" of the misconduct charges. (Defendants' Exhibit 1.) Therefore, Defendant Vilgos is entitled to summary judgment on Plaintiff's due process claim.

Defendants Caruso, Burnett, Bull and Vilgos assert that they are entitled to summary judgment on Plaintiff' claims pursuant to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 because the RLUIPA does not provide for damages and Plaintiff's request for injunctive relief is moot. As noted by Defendants, the Sixth Circuit recently held that monetary damages are not available under RLUIPA. *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir.2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."), petition for cert. filed, 78 U.S.L.W. 3065 (U.S. July 22, 2009) (No. 09-109). The Court notes that Plaintiff is no longer incarcerated at OCF, and currently resides at the Chippewa County Jail. Therefore he is no longer under the control or custody of Defendants and is unlikely to be returned to OCF. The Court concludes that because Plaintiff may not seek damages under the RLUIPA, and because his claims for injunctive relief are moot, Defendants Caruso, Burnett, Bull and Vilgos are entitled to summary judgment on Plaintiff's RLUIPA claims.

Defendant Bull asserts that he is entitled to summary judgment on Plaintiff's Eighth Amendment claims. In his complaint, Plaintiff asserts that Defendant Bull "cranked down" on the handcuffs he placed on Plaintiff, causing Plaintiff great pain, and injuring Plaintiff's wrist. Plaintiff also alleges that Defendants Bull and Vilgos placed him in administrative segregation for five days

with no heat and a window that would not close in freezing temperatures. Plaintiff alleges that he was not allowed to sleep and was given insufficient bedding and clothing for the cold.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Defendant Bull attests that he does not recall handcuffing Plaintiff, and asserts that because he is a lieutenant and supervising officer, he is not involved in handcuffing prisoners unless there is an emergency. Defendant Bull states that handcuffing Plaintiff and taking him to segregation following the issuance of the misconduct ticket on October 14, 2006, was not an emergency. (Defendants' Exhibit 5, Bull Affidavit, ¶¶ 2-3.) Defendants also offer a copy of Plaintiff's medical records which show that Nurse Barbara J. Robbins spoke to Plaintiff on October 14, 2006, in temporary segregation and that he denied any problems. In addition, as noted previously, the records show that Plaintiff was seen numerous times over the next several days, during which he asked for his medications, complained of abdominal pain, and was suspected of being on a hunger strike. Plaintiff's stool was tested for occult blood and his diet was monitored to make sure that he was eating. (Defendants' Exhibit 13, pp. 6-20.) As asserted by Defendants, there is absolutely no indication that Plaintiff's wrist was injured as a result of excessive force. Nor is there any evidence that Plaintiff was subjected to freezing temperatures in his segregation cell. Defendants have come forward with sufficient evidence to show that Plaintiff was not subjected to cruel and unusual

punishment in violation of the Eighth Amendment. Therefore, Defendant Bull is entitled to summary judgment on this claim.

Plaintiff claims that Defendants engaged in a conspiracy to violate his constitutional rights. In order to state a claim of civil conspiracy under 42 U.S.C. § 1985, a plaintiff must establish (1) a conspiracy involving two or more persons, (2) for the purpose of depriving a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. A plaintiff must also show some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992).

It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under 42 U.S.C. § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). Because Plaintiff fails to allege any facts showing that Defendants Caruso or Bull were involved in any such conspiracy, they are entitled to summary judgment on this claim. However, as noted above, there is an issue of fact regarding whether Defendants Burnett and Vilgos violated Plaintiff's rights to equal protection and to be free from retaliation. Plaintiff alleges facts showing that Defendants Burnett and Vilgos communicated with regard to restrictions on Plaintiff's religious rights on the basis of his religious affiliation after Plaintiff had filed complaints against Defendant Vilgos and had threatened to file a lawsuit.

Therefore, Defendants Burnett and Vilgos are not entitled to summary judgment on Plaintiff's conspiracy claims.

Plaintiff claims that Defendants' conduct violated his state law rights. The court notes that pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719, 728 (6th Cir. 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S. Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966). Because Plaintiff's federal claims against Defendants Caruso and Bull are properly dismissed, they are entitled to dismissal of Plaintiff's state law claims. However, the court will not dismiss Plaintiff's state law claims against Defendants Burnett and Vilgos at this time.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated by Defendants Caruso and Bull, those Defendants are entitled to qualified immunity, as are Defendants Vilgos and Burnett on Plaintiff's RLUIPA and due process claims.

However, because there is a genuine issue of material fact regarding Plaintiff's retaliation and equal protection claims against Defendants Vilgos and Burnett, they are not entitled to qualified immunity on these claims.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment with regard to all of his claims against Defendants Caruso and Bull, as well as with regard to his RLUIPA and due process claims against Defendants Burnett and Vilgos. However, Defendants Burnett and Vilgos are not

entitled to summary judgment on Plaintiff's retaliation and equal protection claims. Accordingly, Defendants' Motions for Summary Judgment (Docket #74 and #22) will be granted, in part, and denied, in part.

An Order consistent with this Opinion will be entered.


Dated: 3/18/2011                          _____/s/ R. Allan Edgar_____
                                          R. ALLAN EDGAR
                                          UNITED STATES DISTRICT JUDGE