UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

DARRIN LaPINE, #305535,

        Plaintiff,        Case No. 2:09-cv-214

v.        Honorable R. Allan Edgar

JAMES VILGOS, DAVE BURNETT et al

        Defendants.
_____/

## MEMORANDUM OPINION

This case is about "smudging", a Native American religious practice wherein persons rub themselves with a smoldering mixture of tobacco, cedar, sage, and sweet grass. Plaintiff Darrin LaPine is a Native American prisoner in the Michigan Department of Corrections (MDOC). He claims that (1) the defendants retaliated against him for exercising his First Amendment rights, (2) that they violated 42 USC § 1983 by denying him Equal Protection of the laws under the Fourteenth Amendment, (3) they have conspired to deprive him of equal protection of the laws in violation of 42 USC § 1985, and (4) they have violated state law. The case came before this Court for a bench trial on November 26, 2012.

### Retaliation

MDOC inmates at the Ojibway Correctional Facility (OCF) in the western portion of Michigan's Upper Peninsula hold religious services in a school room that serves as a chapel on weekends. This room is used by or scheduled for religious services conducted by many religious groups. The services are organized and coordinated by

the prison's chaplain.  One of these religious groups consisted of Native Americans who were  members of NATW (Native American Traditional Way).  As a part of their ceremonies, they engaged in smudging.

Prior to October 2006, the smoke produced by smudging had set off prison fire alarms at OCF.  Smudging was also a statewide environmental concern for the MDOC because of its degradation of prison air quality.  Smoking is not permitted in prisons, and many facilities do not have windows that can be opened.

Defendant James Vilgos was the chaplain at OCF.  Defendant Dave Burnett was the MDOC special activities coordinator in Lansing.  Mr. Burnett supervised Mr. Vilgos and other MDOC chaplains, dealing mostly with prison religious issues.  Mr. Vilgos, recognizing the need to accommodate smudging for NATW members, had made several requests of different wardens at OCF to allow the NATW (and smudging) services to be held outside.  These requests were denied for security reasons.

On October 13, 2006, as approximately nine NATW members gathered for their service, Chaplain Vilgos advised them of the contents of an email that he had received from Mr. Burnett.  The email attempted to reach a solution to the smudging problem by limiting it to a duration of three to five minutes.  This did not sit well with the NATW folks.  Plaintiff LaPine "got in Vilgos' face", became vocal, gathered some of the others together, threatened a lawsuit, and refused to go forward with the service.  At this point, Vilgos terminated the NATW gathering and called for backup.  Vilgos filed a misconduct charge against plaintiff which included an allegation of "threatening behavior".  This misconduct was eventually dismissed in the course of the MDOC grievance/discipline system and Plaintiff received no sanctions as a consequence.

2

In order to set forth a First Amendment retaliation claim, plaintiff must establish that <u>first</u> he was engaged in protected conduct; <u>second</u>, an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and <u>third</u>, that adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v Blatter, 175 F 3d 378, 394 (6th Cir. 1999)*.

Was plaintiff engaging in protected conduct? Obviously, the practice of one's religion is protected conduct. Here, however, plaintiff received no adverse action because of his religion or the practice thereof. In fact, when Chaplain Vilgos told plaintiff and the others to proceed with their service, they refused.[1] Plaintiff's complaints about the smudging time limits were also subject to First Amendment protection, provided that they were not disruptive or threatening to prison order and discipline. *See Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), *quoting Turner v. Safley*, 482 U.S. 78, 89 (1987). He did refuse to continue with the religious services. This was not protected activity. If plaintiff said that he was going to file grievances and lawsuits over the smudging, that would be protected activity. However, if that happened, it was not the thing that motivated Vilgos to file the misconduct. Vilgos was motivated, not by plaintiff's threats to sue or file grievances, but by the fact that plaintiff had disrupted religious services. Hence, plaintiff has clearly not established the third *Thaddeus-X* element. In any event, even if all of the *Thaddeus-X* elements had been satisfied here, Vilgos has carried this burden of demonstrating that he would have taken

---

[1] Furthermore, it cannot be said that the time limit placed on smudging in these circumstances was an undue infringement on plaintiff's free exercise rights. These limits on smudging were put in place here only after consultation with advisors from the Native American Community.

the action he did in the absence of any protected conduct.  *Thaddeus-X* 175 F3d at 394.[2]

### Equal Protection

Plaintiff makes a claim here that the defendants violated 42 USC § 1983 by denying him 14th Amendment equal protection.  To make out an equal protection violation, plaintiff must prove the following elements: (1) that the defendants, as State actors, treated him disparately based on his membership in a protected class; and (2) that the defendants' actions proximately caused him injury.  *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990); *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Mann v. Helmig*, 289 Fed. Appx. 845, 850 (6th Cir. 2008).  If these elements are proven, then a prison official's action which infringes on a prisoner's constitutional rights may, nonetheless, be valid if the officials' actions is reasonably related to a legitimate penological interest.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff has presented nothing that would even tend to show a Section 1983/Equal Protection violation.  The MDOC has a Prisoner Benefit Fund (PBF).  This is a small amount of money derived from sales at prison stores.  Plaintiff complains that these funds are used to purchase, for example, Bibles for Christians, but that the MDOC will not purchase sweet grass for NATW members.  This is inaccurate.  The MDOC has used PBF funds to purchase Bibles for use by Christians groups - but not for individual Christians.  Likewise, the MDOC has purchased sweet grass for use by

---

[2] Plaintiff testified that after this October 2006 incident, he endured administrative segregation and other ills.  There is, however, no evidence that this had anything to do with the events here in question or with the actions of any of the defendants in this case.

NATW groups, but not for "medicine bags" of individual NATW members.[3]  In general, the MDOC does not use PBF funds to purchase religious or other items for any individual inmates.  In short, there is simply no disparate treatment here, and no equal protection violation.

## Conspiracy

To state a claim of civil conspiracy, under 42 USC § 1985, the plaintiff must establish (1) a conspiracy involving two or more persons ; (2) for the purpose of depriving a person or class of persons the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.  *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), *citing Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994), *cert. denied*, 514 U.S. 1066 (1995).  The plaintiff must also show some racial or other class based individually discriminatory animus behind the conspirators' actions.  *Collyer*, 98 F.3d at 233, *citing Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993).

There was no conspiracy here of any kind - much less one that had a discriminatory purpose.  There is no evidence whatsoever supporting plaintiff's conspiracy claim.  To the contrary, all the evidence shows an effort by the MDOC to allow and accommodate plaintiff and NATW practices and beliefs.

---

[3]MDOC does allow donated herbs to be used in individual medicine bags.  Now OCF has a garden in which herbs are grown which can be used by individuals.

## State Law Claims

Any state claims which plaintiff has made in this case are indecipherable, unsupported, and accordingly without merit.

## Default Judgment as to Defendant Doreene Matthew

Defendant Doreene Matthews was served but did not answer. The Clerk of Court made an entry of default against her (Doc. #71); and this Court reserved ruling in plaintiff's motion for a default judgment pending the trial when the issue of damages could be determined. (Doc. #206). At the trial, Ms. Matthews' name was barely mentioned. It is unclear what connection she may have to this case. All we know from the trial is that she was an MDOC social worker who denied a psychiatric exam to plaintiff. She filed a misconduct of some sort against plaintiff. This misconduct was upheld. Plaintiff has offered no proof of any damages that he suffered at the hands of Ms. Matthews. Accordingly, the Court will enter a judgment against Doreene Matthews for the nominal damages in the amount of one dollar ($1.00)

A judgment will Enter.

SO ORDERED.

Dated: 11/30/2012                                                       /s/ R. Allan Edgar
                                                                                   R. ALLAN EDGAR
                                                                                   UNITED STATES DISTRICT JUDGE